### THE WM. H. TAYLOR.

### THE P. R. R. NO. 32.

#### (District Court, S. D. New York. January 5, 1910.)

COLLISION (§ 79*)—TUGS AND TOWS—SIGNALS.
  Collision between the tows of the Taylor and of the No. 32 in the Arthur Kill opposite Morse Creek. *Held* that the No. 32 was solely in fault for failing to comply with an agreement to pass to the left.
  [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 123, 139; Dec. Dig. § 79.*
  Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]
(Syllabus by the Court.)

Libels by Isaac E. Ewing and by John Newman against the steam tug William H. Taylor and steam tug P. R. R. No. 32. Libels against the Taylor dismissed, and decree rendered against the steam tug P. R. R. No. 32.

James J. Macklin, for libellants.
Carpenter, Park & Symmers, for the Taylor.
Robinson, Biddle & Benedict, for the No. 32.

ADAMS, District Judge. These actions were brought by the owners of the canal boats Mary Ewing and Lillie & Nellie against the tug Wm. H. Taylor to recover for the damages, said to have been $800 in each case, suffered by reason of a collision in the Arthur Kill on the 9th day of June, 1908, between the said boats and the Taylor and her tow of two loaded mud scows in the vicinity of Bay Way. The said boats were taken in tow by the No. 32 at the Pennsylvania Railroad stakes, New York Bay, bound for South Amboy, New Jersey. The tows were on hawsers, the boats in the No. 32's tow

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

being light, made up in 3 tiers, the hawser tier consisting of 2 boats, the 2d tier of 3 boats and the 3d tier of 2 boats. The Ewing was the outer starboard boat in the 2d tier and the Lillie & Nellie was the outer starboard boat in the 3d tier.

The Taylor's tow consisted of 2 scows, laden with mud, each drawing about 14 feet. The hawser from the tug was about 30 fathoms and the scows were close together, one behind the other.

The libellants charged the Taylor with fault: (1) in not keeping a proper lookout, (2) in being on the wrong side of the channel, (3) in not slowing and stopping in time, (4) in proceeding too fast and (5) in not going closer to the New Jersey shore, after having selected that side.

The Taylor brought in the No. 32 by petition, alleging that the tide was flood, running to the eastward; that when approaching the Baltimore & Ohio Railroad Bridge across the Kill, there was a dredge working in or near the South or Staten Island draw preventing the passage of vessels through that side of the draw, and coming through the northerly, or New Jersey side, was the No. 32 bound to the westward with a tow made up in the manner alleged; that the position of the dredge at the southerly side was well known to those navigating the No. 32 and it was not safe or practicable for the tows on account of the presence of the dredge and the set of the tide, for the tugs to pass port to port; that when the Taylor was about ¾ of a mile away she gave a signal of 2 whistles to the No. 32 to which the No. 32 replied with a similar signal and the helm of the Taylor was put to starboard and she ran over with her tow to the northerly or New Jersey side of the channel as far as she could go; that the No. 32 did not appear to change her course after the exchange of the said signals but kept on and thereupon the Taylor gave another signal of 2 and slowed down; that the No. 32 answered this signal but apparently did not comply therewith and go sufficiently to port and her tow was permitted to swing over to the northward so as to strike the first scow of the Taylor's tow, damaging two of the boats in the No. 32's tow. The Taylor then alleges that the No. 32 was in fault: (1) in not keeping a proper lookout and (2) in not keeping her tow sufficiently to the port.

The No. 32 answered the petition and after some admissions and denials, stated:

"Seventh: On the afternoon of June 9, 1908, the tug 'P. R. R. No. 32' was proceeding in the Arthur Kill bound for South Amboy, with a tow of seven light boats, the boat 'Mary Ewing' being the starboard boat of the second tier of three boats, and the boat 'Lillie and Nellie' being the starboard boat of the third tier of two boats. The tide was flood. A digger with a boat alongside was anchored in front of the eastern draw of the Baltimore & Ohio bridge, near Elizabethport. As the 'No. 32' was entering the western draw, the tug 'Wm. H. Taylor,' which had been sighted coming up the Sound with two loaded scows in tow, blew a signal of two whistles, which was answered by two whistles from the 'No. 32.' The 'No. 32' starboarded her helm and headed over to the Staten Island shore as close as possible without grounding. After passing through the draw the 'No. 32,' seeing that the 'Taylor' was coming on without altering her course, blew a signal of two whistles, which the 'Taylor' answered by two whistles. The 'No. 32' continued to head over toward the Staten Island shore as much as possible, but the 'Taylor' came on, heading

for the tow at full speed, and came into collision with the 'Mary Ewing' and brought her tow into collision with the said 'Mary Ewing' and the boat 'Lillie and Nellie,' damaging them.

Eighth: Said collision and damage were not caused by or through any fault or negligence on the part of the said steamtug 'P. R. R. No. 32,' or those in charge of and navigating her, but were caused wholly through the fault and negligence of the said steamtug 'Wm. H. Taylor' and those in charge of and navigating her in the following among other respects: 1. In not keeping a proper lookout, properly stationed and attending to his duties as such. 2. In not slowing, stopping and backing in time to avoid a collision. 3. In proceeding at too high a rate of speed. 4. In not going closer to the New Jersey shore after having selected that side. 5. In not keeping clear of the 'No. 32's' tow."

The testimony, in substance, sustains the allegations of the Taylor's petition. It appears there were 2 signals of 2 blasts each by the respective tugs and that the No. 32 did not conform thereto by keeping her tow on the agreed side but permitted it to be swung over into the waters which the Taylor and tow were entitled to. This no doubt was partly attributable to the south or south-east wind, of a velocity of 13 or 14 miles per hour, which prevailed, but that is something which the No. 32 should have considered when she agreed to the method of passing. If she could not manage her tow so as to comply with the course proposed by the Taylor, she should not have consented to it. She agreed that her tow should be kept on the Staten Island side of the channel and the Taylor was not in fault, in view of the signals, for assuming that the No. 32 could comply with her agreement. She navigated on the theory that the whistles constituted an agreement upon which she was entitled to rely. She did slow at about the time of the 2d exchange and navigated as far as possible to the New Jersey side of the channel but as it turned out could not keep clear of the No. 32's tow and the collision happened about opposite Morse Creek.

The libel against the Taylor should be dismissed and the libellants allowed decrees against the No. 32, with orders of reference.